J-S67032-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.J.P., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.P., FATHER | : | No. 656 EDA 2017 |

Appeal from the Order Entered February 6, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0001044-2016,
CP-51-DP-0000155-2016

| | | |
|---|---|---|
| IN THE INTEREST OF A.M.P., A MINOR | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.P., FATHER | : | No. 657 EDA 2017 |

Appeal from the Order Entered February 6, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-00010450-2016,
CP-51-DP-0002591-2015

BEFORE:   GANTMAN, P.J., MUSMANNO, J., and STEVENS*, P.J.E.

MEMORANDUM BY GANTMAN, P.J.:          **FILED NOVEMBER 22, 2017**

Appellant, J.P. ("Father"), appeals from the orders entered in the Philadelphia County Court of Common Pleas Family Court Division, which granted the petitions of the Department of Human Services ("DHS") for involuntary termination of Father's parental rights to his minor children, J.J.P. and A.M.P. ("Children").  We affirm.

In its opinion, the Family Court fully and correctly set forth the relevant facts and procedural history of this case.  Therefore, we have no

_____
* Former Justice specially assigned to the Superior Court.

reason to restate them.

Father raises five issues for our review:

WHETHER THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY TERMINATING THE PARENTAL RIGHTS OF FATHER…PURSUANT TO 23 PA.C.S.A. SECTION 2511(A)(1) WHERE FATHER PRESENTED EVIDENCE THAT HE MADE SIGNIFICANT EFFORTS TO PERFORM HIS PARENTAL DUTIES[?]

WHETHER THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY TERMINATING THE PARENTAL RIGHTS OF FATHER…PURSUANT TO 23 PA.C.S.A. SECTION 2511(A)(2) WHERE FATHER PRESENTED EVIDENCE THAT HE MADE SIGNIFICANT EFFORTS TO REMEDY ANY INCAPACITY OR NEGLECT BY COMPLETING PARENTING CLASSES AND DRUG AND ALCOHOL TREATMENT AND VISITING HIS CHILDREN WHILE IN CARE[?]

WHETHER THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY TERMINATING THE PARENTAL RIGHTS OF FATHER…PURSUANT TO 23 PA.C.S.A. SECTION 2511(A)(5) WHERE EVIDENCE WAS PROVIDED TO ESTABLISH THAT…CHILDREN WERE REMOVED FROM THE CARE OF FATHER, HOWEVER FATHER IS CURRENTLY CAPABLE OF CARING FOR [CHILDREN] AND THE CONDITIONS WHICH LED TO REMOVAL HAVE BEEN REMEDIED[?]

WHETHER THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY TERMINATING THE PARENTAL RIGHTS OF FATHER…PURSUANT TO 23 PA.C.S.A. SECTION 2511(A)(8) WHERE EVIDENCE WAS PRESENTED TO SHOW THAT FATHER IS CURRENTLY CAPABLE OF CARING FOR HIS CHILDREN AND THE CONDITIONS WHICH LED TO REMOVAL HAVE BEEN REMEDIED[?]

WHETHER THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY TERMINATING THE PARENTAL RIGHTS OF FATHER…PURSUANT TO 23 PA.C.S.A. SECTION 2511(B) WHERE EVIDENCE WAS PRESENTED THAT FATHER HAS A PARENTAL BOND WITH [CHILDREN] THAT WOULD BE DETRIMENTAL TO SEVER[?]

(Father's Brief at 7).

Appellate review of termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis

exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191-92 (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

DHS filed a petition for the involuntary termination of Father's parental rights to Children on the following grounds:

**§ 2511. Grounds for involuntary termination**

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or

will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (a)(2), (a)(5), (a)(8), and (b). "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." **In re Z.P., supra** at 1117.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and

convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his… parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

Termination under Section 2511(a)(1) involves the following:

To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his… conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted). Regarding the six-month period prior to filing the termination petition:

[T]he trial court must consider the whole history of a given

- 6 -

case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his… parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D., supra* at 337. "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Id.* at 340. The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in the case of *In re Geiger*, 459 Pa. 636, 331 A.2d 172 (1975), where the Pennsylvania Supreme Court announced that under what is now Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In Interest of Lilley*, 719 A.2d 327, 330 (Pa.Super. 1998).

"Termination of parental rights under Section 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Z.P., supra* at 1118.

"[T]o terminate parental rights under Section 2511(a)(8), the following factors must be demonstrated: (1) [t]he child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa.Super. 2003). "Section 2511(a)(8) sets a 12–month time frame for a parent to remedy the conditions that led to the children's removal by the court." *In re A.R.*, 837 A.2d 560, 564 (Pa.Super. 2003). Once the 12–month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of the Agency supplied over a realistic time. *Id.* Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of Agency services. *In re Adoption of T.B.B.*, 835 A.2d 387, 396 (Pa.Super. 2003); *In re Adoption of M.E.P., supra*.

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *Id.* Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P., supra* at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have his…rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001). This Court has said:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the

child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert [himself] to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his… ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re B.,N.M., supra* at 855 (internal citations omitted). "[A] parent's basic constitutional right to the custody and rearing of his…child is converted, upon the failure to fulfill his…parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *Id.* at 856.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Lyris F. Younge, we conclude Father's issues merit no relief. The Family Court opinion comprehensively discusses and properly disposes of the questions

presented. (*See* Family Court Opinion, filed July 19, 2017, at 1-7) (finding: **(1-4)** Father was assigned Single Case Plan ("SCP") objectives to maintain sobriety, comply with court-ordered Parenting Capacity Evaluation, earn certificate from Family School, procure stable housing, and regularly visit Children; at termination hearing, social worker credibly testified Father was minimally compliant with SCP goals; Father engaged in domestic violence with Mother, and Family School discontinued Father's enrollment due to inability to engage effectively in programs, rendering them unproductive, his substance abuse, his inability to stay awake, his constant nodding off during sessions, and sporadic and tardy attendance; social worker explained Father could not address issues which prevented him from completing Family School or Parenting Capacity Evaluation; social worker stated Father was consistently under influence of substances and had been unable to maintain sobriety for more than few weeks at time during pendency of case; social worker added Father failed to obtain suitable housing during 20 months A.M.P. was in DHS' care and 13 months J.J.P. was in DHS' care; J.J.P was placed immediately following his birth pursuant to an Order of Protective Custody obtained by DHS and adjudicated dependent on January 29, 2016; Father's visits were suspended due to inappropriate and erratic behavior during visits; **(5)** J.J.P and A.M.P have been without essential care and control and subsistence necessary for their physical and mental well-being; Father stated he wanted to have supervised visits and then to "build on

there"; social worker credibly testified Children were placed in same home and strongly bonded with their foster parent; foster home is willing to provide permanency for Children together; Children would not suffer irreparable harm from termination of Father's parental rights and adoption is in best interests of Children). Accordingly, we affirm based on the Family Court's opinion.

Orders affirmed.

*Judgment Entered.*

![signature]

Joseph D. Seletyn, Esq.
*Prothonotary*

Date: _11/22/2017_

THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

FAMILY COURT DIVISION

IN RE: J.J.P.                              :        CP-51-DP-0000155-2016
                                           :        CP-51-AP-0001044-2016
IN RE: A.M.P.                              :        CP-51-DP-0000155-2016
                                           :        CP-51-AP-0001044-2016

                                           :
APPEAL OF: J.P., father                    :        Superior Court
                                           :        No. 656   EDA 2017
                                           :        No. 657   EDA 2017

OPINION

**Younge, J.**

This Appeal arises from this Court's Order on February 6, 2017, terminating the parental rights of  J. P.  ("father"), pursuant to the petitions filed on behalf of the Department of Human Services ("DHS") by the City of Philadelphia Solicitor's Office. Claire Leotta, attorney for father, filed a timely Appeal from the February 6, 2017 order terminating father's parental rights including an attached Concise Statement of Errors, Affidavit of Service, and other related documents necessary to perfect this Appeal.

**Factual and Procedural Background:**

A summary of the relevant procedural history is set forth as follows:

On September 13, 2014, the Department of Human Services (DHS) received a General Protective Services (GPS) report alleging that A.M.P. and her sibling were frequently left at home alone. The report also alleged Philadelphia Police were often called to the home to address incidents of domestic violence and that there were broken items in the home as a result of the domestic violence. Mother and Father were often observed fighting on the streets. The report indicated Father used methadone. The report was substantiated.

On September 29, 2014, the family was referred for In-Home Protective Services (IHPS) to address the issues of drug abuse and domestic violence issues.

On October 17, 2014, DHS went to the family home and Father was enrolled in a methadone maintenance and treatment program being monitored by the Goodman Clinic. Father received individual and group therapy.

On October 24, 2014, the family began receiving IHPS through Turning Points for Children (TPFC).

On January 21, 2015, the family began receiving in-home services through the Community Umbrella Agency (CUA), Bethanna.

On February 7, 2015, Bethanna attempted an initial visit with the family. Bethanna met A.M.P.'s Paternal Grandmother who reported that Mother and Father were not present and had taken A.M.P. with them. Bethanna scheduled another visit with the family on February 10, 2015.

On February 10, 2015, Bethanna met with the family. Bethanna observed that Father's behavior was volatile. During the visit, Father and Mother engaged in a verbal altercation during a telephone call. Father verbally abused Mother during the telephone conversation while in A.M.P.'s presence. Father reported he was arguing with Mother because she did not take him to the methadone clinic.

Father reported Mother used crack cocaine and had began using one month earlier. Father's reported Mother had relapsed into drug use due to stress associated with the illness suffered by the children's Maternal Great-Grandmother. Father's reported Mother was seeking a Protection from Abuse (PFA) order against him and he was unsure if he wanted to remain in the relationship. Father stated he did not need therapy because he took Xanax.

On February 17, 2017 Bethanna went to the home. Mother reported she gave her all her money to Father. Father was observed falling asleep multiple times throughout the visit instigated several arguments with other family members.

On March 3, 2015, Bethanna went to the home and learned Mother rendered a positive drug screen for benzodiazepines three weeks earlier. Paternal Grandmother ensured Bethanna Father was not left alone with A.M.P. due to his diminished capacities.

On March 24, 2015, Bethanna conducted a home visit. Father appeared to become more tired as the visit progressed.

On May 6, 2015, Bethanna visited the home and observed Father to be under the influence of drugs. Bethanna addressed these behaviors with Paternal Grandmother, who agreed to ensure that Father was not to be left alone with A.M.P.

On May 19, 2015, Bethanna implemented a Safety Plan with Paternal Grandmother and Paternal Aunt which stated they would ensure that A.M.P. was not left alone with Father. Paternal Grandmother and Paternal Aunt would provide line of sight supervision of A.M.P., if either caregiver were not present in the home.

On June 9, 2015, Bethanna learned Father had rendered a positive drug screen for cocaine and reportedly used cocaine upon learning Mother was pregnant again.

On July 1, 2015, Bethanna went to the home. Bethanna informed Father he was observed with A.M.P. without supervision of A.M.P.'s Paternal Grandmother. Paternal Grandmother reported she was with the family at the time, but left to use the restroom. Bethanna reiterated Paternal Grandmother must supervise Father with A.M.P. at all times.

On August 14, 2015, Bethanna went to visit the family and found A.M.P. unsupervised at a swimming pool with Father.

DHS learned that on August 19, 2015, Bethanna implemented a Safety Plan with Paternal Grandmother and Paternal Aunt.

On September 22, 2015, DHS filed a dependent petition for A.M.P. based on the ongoing issues of drug abuse, domestic violence and lack of appropriate supervision in the home.

On October 1, 2015, an Adjudicatory Hearing for A.M.P. was held before the Honorable Vincent L. Johnson. Judge Johnson ordered CUA to locate A.M.P. for placement with the agency and police assistance was to be available, if necessary. The address and location of the child was to be kept confidential. Judge Johnson further ordered Father to refrain from contact with A.M.P. except during court-ordered visits. Father was referred to clinical Evaluation Unit (CEU) for a drug screen, dual diagnosis assessments and weekly drug screen. Judge Johnson ordered a Parenting Capacity Evaluation (PCE).

DHS subsequently learned that Father tested positive for benzodiazepines and methadone at the CEU.

On October 5, 2015, A.M.P. was placed in the home of their Maternal Aunt and Uncle through Bethanna.

On December 17, 2015 a Permanency Review hearing for A.M.P. was held before Judge Johnson, who ordered A.M.P. remain committed to DHS. Father was re-referred to the CEU for a drug screen, dual diagnosis assessments, monitoring, and three random drug screens prior to the next court date. The Court found that Father was attending Family School. The Court ordered that Family School make note of how many time Father fell asleep during the Family School session.

On December  , 2015, Mother gave birth to J.J.P. at the Hospital of the University of Pennsylvania (HUP).

On December 21, 2015, DHS received a GPS report which alleged that Mother and J.J.P. tested positive for opiates at the time of J.J.P.'s birth on December  2015. J.J.P. was born 37 weeks and five days gestation weighing six pounds and 12 ounces. Mother and Father were involved in a car accident prior to J.J.P.'s birth. The report was determined to be valid.

On December 23, 2015, DHS made a visit to the Hospital of University of Pennsylvania (HUP) and met with Father. DHS observed that Father appeared to under the influence of an unknown substance.

On January 21, 2016, J.J.P. was ready to be discharged from the hospital. DHS obtained an Order of Protective Custody (OPC) and J.J.P. was placed in the Lutheran Children and Family Service foster home.

At the Shelter Care hearing for J.J.P. held on January 22, 2016, the Court lifted the OPC, ordered the temporary commitment to DHS stand.

On January 29, 2016, an Adjudicatory Hearing for J.J.P. was held before the Honorable Lyris F. Yonge who discharged J.J.P.'s temporary commitment to DHS, adjudicated him dependent and committed him to DHS. Judge Younge ordered Father referred to the CEU for a drug screen, a dual diagnosis assessment, and three random drug screens. Father was granted supervised visits at the agency.

On March 17, 2016, a Permanency Review Hearing for A.M.P. and J.J.P. was held before Judge Younge, who ordered that they remain committed to DHS. As to all three children, Judge

3

Younge ordered that Father's visits suspended until the next court date after Father was escorted from the courtroom after he displayed erratic behavior during the hearing.

On April 26, 2016, A.M.P. was moved to a foster home through A Second Chance after it was learned that A.M.P. was seen in an automobile and at a methadone clinic with Mother.

On June 2, 2106, a Permanency Review Hearing for A.M.P. and J.J.P. was held before Judge Younge who ordered that the children remain committed to DHS. Judge Younge ordered the judicial removal of A.M.P. and her sibling from their foster home. Judge Younge ordered the foster parents to be prohibited from any contact or visits with A.M.P. Judge Younge issued a Stay Away Order as to the foster parents and the entire CUA-Bethanna agency including the CUA social worker and social worker supervisor. Judge Younge ordered the foster parents home never to be considered as a foster home in the future. Mother was referred to CEU for drug screens and her visits were suspended until further order of the Court. Mother was ordered to obtain and provide documentation of her participation in a drug and alcohol treatment program and submit it to the Court. The children's addresses were ordered to remain confidential.

On September 1, 2016, a Permanency review Hearing for A.M.P. and J.J.P. was held before Judge Younge who ordered the children remain as committed to DHS. Judge Younge further noted Father declined to participate in Achieving Reunification Center (ARC). Father was referred to CEU for drug screens, monitoring and random drug screens prior to the next court date. Father was re-referred to ARC, attend the program and comply with all recommendations of the program. Father's visits remained suspended until further order of the Court. The Court ordered no family members be considered as placement resources for A.M.P. and J.J.P. A single Case Plan (SCP) meeting be held to address the children's appropriate permanency goal. Father attend the SCP meeting and comply with their objectives.

The matter was the listed on a regular basis on the docket of the Philadelphia Court of Common Pleas, Family Court Division- Juvenile Branch pursuant to section 6351 of the Juvenile Act, 42 Pa. C.S.A. § 6351, and evaluated for the purpose of reviewing the permanency plan of the child.

In subsequent hearings, the Dependency Review Orders reflect the Court's review and disposition as a result of evidence presented, primarily with the goal of finalizing the permanency plan.

On February 6, 2017, during the Termination of Parental Rights hearing for father, the Court found by clear and convincing evidence that Father's parental rights as to A.M.P. and J.J.P. should be terminated pursuant to the Juvenile Act. Furthermore, the Court held it was in the best interest of the children that the goal be changed to Adoption.

The Appeal of father is as follows:

**Issues**
1) Whether under the Juvenile Act, 42 Pa. C.S. section 6351, and 55 Pa. Code Section 3130.74, in accordance with the provisions of the Federal Adoption and Safe Families Act, 42 U.S.C. Section 671 et seq., reasonable efforts were made to reunite the Father with his child and whether the goal change to Adoption was the disposition well suited to the safety, protection and physical, mental and moral welfare of the child.

4

2) Whether it was proven by clear and convincing evidence that Father's parental rights should be terminated under Sections 2511 (a)(2) and 2511(b).

## Discussion

The grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa. C.S. § 2511. Under this statute, the trial court must engage in a bifurcated process in which it initially focuses on the conduct of the parent under § 2511(a). *In the Interest of B.C.*, 36 A.3d 601 (Pa. Super 2012). If the trial court determines that the parent's conduct warrants termination under § 2511(a), it must then engage in an analysis of the best interest of the child under § 2511(b). *Id.*

In the present case, father's parental rights were terminated based on §§2511(a), (1), (2), (5), (8) and §2511(b).

In proceedings to involuntarily terminate parental rights, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for termination. *In re Adoption of Atencio,* 650 A.2d 1064 (Pa. 1994). The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitation of the truth of the precise facts in issue." *In re J.D.W.M.,* 810 A2d 688, 690 (Pa.Super. 2002).

To satisfy § 2511(a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least six (6) months prior to filing of the termination petition, which reveal a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. It is clear from the record that for a period of six (6) months leading up to the filing of the Petition for Involuntary Termination, mother failed to perform parental duties for the child. The Court found by clear and convincing evidence that the father refused or failed to perform his parental duties.

In the instant matter, Father was assigned Single Case Plan objectives of maintain and achieve sobriety from substance abuse problems, comply with court ordered Parenting Capacity Evaluation, certificate from Family School, visitation and housing. (N.T. 2/6/17, pgs. 23, 41) Furthermore the social worker testified there were issues with domestic violence. (N.T. 2/6/17, pg. 24, 43) Testimony of the social worker revealed that Family School referral was discontinued because Father was allegedly under the influence of substances. (N.T. 2/6/17, pg. 41) Moreover testimony of social worker revealed Father could not effectively address issues which prevented completion of Family School or a parenting capacity evaluation. (N.T. 2/6/17, pg. 42) Social worker testified Father was constantly under the influence and unable to maintain more than a few weeks of sobriety at any point during the case. (N.T. 2/6/17, pgs. 43-44) Furthermore, social worker testified Father failed to have suitable housing. (N.T. 2/6/17, pg. 43) Social worker testified Father was minimally compliant with his objectives for reunification with A.M.P. and J.J.P. (N.T. 2/6/17, pgs. 44,53)

A parent has an affirmative duty to act in her child's best interest. "Parental duty requires that the parent not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." *In re Dale A., II,* 683 A.2d 297, 302 (Pa. Super. 1996). In reference to the

5

parental contact, "to be legally significant, the contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship, and must demonstrate and willingness and capacity to undertake the parenting role". *In re D.J.S.*, 737 A2d 283, 286 (Pa.Super. 1999) (quoting *In re Adoption of Hamilton*, 549 A.2d 1291, 1295 (Pa.Super. 1988)).

During the twenty months (20) A.M.P. and thirteen (13) months J.J.P. have been in DHS care, Father's visits were suspended due to inappropriate and erratic behavior during visit with A.M.P. and J.J.P. (N.T. 2/6/17, pgs. 42, 52, 58). Social worker testified Father had supervised agency visits through the beginning of the case. (N.T. 2/6/17, pg. 42) Furthermore social worker's testimony was Father's visits were also suspended due to an incident at a kinship home. (N.T. 2/6/17, pgs. 42)

Section 2511 (a)(2) requires that "repeated and continued incapacity, abuse neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for her physical or mental well-being and the condition and causes of the incapacity, abuse, neglect, or refusal, cannot or will not be remedied by the parent. 23 Pa. C.S. § 2511 (a)(2).

Termination of parental rights under §2511 (a)(2) is not limited to affirmative misconduct but may include acts of refusal, as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002).

§2511 (a)(5) requires that :

> (5)    The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of parental rights would best serve the needs and welfare of the child.

§2511 (a)(8) states:

> (8)    The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, twelve (12) months or more has elapsed from the date of the removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of the parental rights would serve the best needs and welfare of the child.

The evidence as discussed above pursuant to §2511 (a)(5) and (a)(8), equally support the Court's conclusion to terminate father's parental rights.

In order to terminate the parental rights, the party seeking termination must prove by clear and convincing evidence that the termination is in the best interest of the child. 23 Pa. C.S. §2511 (b); *In re Bowman*, 647 A.2d 217 (Pa. Super. 1994). The best interest of the child is determined after consideration of the needs and welfare of the child. The trial court must examine the individual circumstances of each case and consider all explanations offered by the parent facing

6

termination of this parental rights to determine if the evidence, in the light of the totality of the circumstances, clearly warrant involuntary termination.

When determining the best interest of the child, many factors are to be analyzed, "such as love, comfort, security, security and stability. *In re Adoption of T.B.B.*, 835 A.2d 387, 397 (Pa. Super. 2003). Another factor that a court is to consider is what, if any, bond exist for the child. *In re Involuntary Termination of C.W.S.M and K.A.L.M.*, 839 A.2d 410, 415 (Pa. Super 2003).

Pursuant to Section 2511(b), the trial court must take account whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. *In re C.S.*, 761 A.2d 1197(Pa. Super. 2000). In the instant matter, social worker testified no irreparable harm beyond repair would be suffered if Father's parental rights were terminated. (N.T. 2/6/17, pg 69) Furthermore, testimony of the social worker revealed it would be in the best interest of A.M.P. and J.J.P. to be freed for adoption. (N.T. 2/6/17, pg. 71) Further testimony of the social worker revealed concern for the children's safety if they were reunified with Father. (N.T. 2/6/17, pg. 71)

Here, social worker testified A.M.P. and J.J.P. were placed in the same home and bonded with each other and their foster parent. (N.T. 2/6/17, pgs. 38-40). Furthermore, the social worker testified the children were placed in a foster home willing to provide permanency for the children together. (N.T. 2/6/17 pg. 38-39)

The Court found the testimony of the social wokers to be credible. (N.T. 2/6/17, pg. 126) Hence, the Court concluded the children would not suffer irreparable or detrimental harm. (N.T. 2/6/17, pg. 131).

The Trial Court found by clear and convincing evidence that the Department of Human Services met their statutory burden pursuant to 23 Pa. C.S.A. § 2511 (a) (2),(5), (8) & (b) and that it was in the best interest of the children, to change their goal to adoption (N.T. 2/6/17, pg. 131)

**Conclusion:**

For the foregoing reasons, the Court finds that the Department of Human Services met its statutory burden by clear and convincing evidence regarding the termination of parental rights pursuant to 23 Pa. C.S. §2511 (a),(1), (2), (5) and (8) and §2511(b). Furthermore, the Court finds that its ruling will not cause A.M.P. and J.J.P. to suffer irreparable harm and it is in the best interest of the children based on the testimony regarding the child's safety, protection, mental, physical and moral welfare, to terminate Father's parental rights.

Accordingly, the Trial Court's Order entered on February 6, 2017, terminating the parental rights of father, J. P. should be properly affirmed.

By the Court:

_____
J.

8

THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

FAMILY COURT DIVISION

IN RE: C.M.M..                               :        CP-51-DP001567-2014
                                             :        CP-51-AP-000065-2017
                                             :
APPEAL OF: M.M., Father                      :        Superior Court
                                             :        No. 960 EDA 2016
                                             :

---

## PROOF OF SERVICE

I hereby certify that this court is serving, today ___July 19, 2017___, the foregoing Opinion, by regular mail, upon the following person(s):

Bennette Harrison, Esquire

City of Philadelphia Law Department
1515 Arch Street, 16th Floor
Philadelphia, PA 19103

Cynthia Keller, Esquire
City of Philadelphia Law Department
1515 Arch Street, 16th Floor
Philadelphia, PA 19103

Claire Leotta, Esquire
12325 Academy Rd Ste 52
Philadelphia, PA, 19154-1927

Michael Graves, Esquire
1213 Vine Street
Philadelphia, PA 19107

BY THE COURT,

Honorable Lyris F. Younge

10